[No. 22389. Department Two. September 5, 1930.]

W. V. BRYANT et al., *Respondents*, v. HARTFORD EASTERN
RAILWAY COMPANY, *Appellant*.[1]

*Coleman & Fogarty* and *W. P. Bell,* for appellant.
*Thos. A. Stiger,* for respondents.

HOLCOMB, J.—This action was brought by respondents to recover damages for injuries sustained by the wife at a grade crossing within the corporate limits of Granite Falls in Snohomish county. The collision occurred, according to the testimony of respondents, on January 5, 1927, at about the hour of five o'clock p. m. It was cloudy at the time, but not raining. Ap-

[1]Reported in 290 Pac. 874.

pellant operates a railroad through Granite Falls, and operated a train thereon at about the time in question, consisting of a gas car and another joined behind it. Respondents alleged negligence in two particulars: First, in failing to ring any bell, blow any whistle or give any other warning of the approach of the train; and, second, in failing to have on a head light, it being alleged that it was dark at the time of the accident.

Appellant alleged contributory negligence on the part of respondent, the husband, who was the driver of the Ford sedan car with which the train collided. Respondents were returning from Everett, which place they left about four o'clock p. m., on the day in question, and were going north in their automobile to their home north of the railroad tracks of appellant. The gas car of appellant was going west on the railroad when the collision occurred. Respondents had a place just outside of Granite Falls, and were personally familiar with this crossing.

Bryant testified that, before going upon the railroad tracks, he came to a dead stop, and looked both ways and listened for at least half a minute. He was corroborated by other disinterested witnesses to the effect that he came to a full stop for about half a minute. The testimony of respondents also was that it then was two or three minutes of five o'clock. At a distance of about thirty feet south of the main line track, there is a spur track. Between the spur track and the main-line track, lumber is piled to within ten or twelve feet of the main-line track and to a height of seven or eight feet. Respondent drove to where he could look past the lumber in each direction, when he stopped, looked in both directions, listened, and saw and heard nothing. He then started up in low gear, and was just crossing the main-line track, when the gas car of appellant, coming from the east, struck them and carried

them down the track for about thirty feet. It was going about thirty or forty miles an hour.

It was an admitted fact that the gas car had no head lights burning. It was not equipped with a bell. The testimony as to whether or not the railroad car sounded its horn, is in utter conflict. The question as to whether it was dark or just twilight at the time, is also in conflict. Respondents and disinterested witnesses testified that it was a half hour after sunset and dark, or pretty dark, and that the street lights in Granite Falls were burning; one of which was near this railroad crossing. Bryant testified that he turned on the lights of his car at Lake Stevens before reaching Granite Falls, and that his auto lights were burning at the time of the collision.

A disinterested witness testified that he crossed the street in front of respondents' car just before the collision and, in doing so, passed in front of the head lights of their car. Another witness testified that he was walking on the track of appellant, approaching the same crossing from the east, and that the gas car passed him when about one hundred feet from the crossing. He said it was dark; that the gas car was going pretty fast and making so little noise that he heard nothing until the gas car was a short distance from him, when he stepped aside, and that he heard no horn and saw no lights on the gas car; that he came very near being killed himself. The evidence also is to the effect that the main-line track of appellant was slightly down-grade to the crossing from the east, and that the crossing is on a curve of about three degrees, which extends about two hundred feet each way from the crossing. The crossing is not paved, but is just a plank crossing and on the same grade with the railroad.

Appellant introduced evidence to the effect that the

collision occurred on January 4, 1927, according to their records, at some time between 4:30 and 4:50 in the afternoon. It was also stipulated between the parties at the trial that the almanac showed that, at the time of the accident, the sun set on January 4 at 4:40 p. m., and on January 5 at 4:41 p. m. in the states of Washington, Oregon, North and South Dakota and other states of that latitude. Appellant also introduced evidence to the effect that it was not dark when the accident occurred, and that the street lights were not burning; that there were no lights on the car of respondents; that the station agent at Granite Falls was doing his office work immediately before the collision in his office without any artificial light, and that, after the collision, the wreck was cleaned up without any artificial light. Evidence was also introduced to the effect that the train made considerable noise, and that the horn of the gas car was sounded from one hundred to one hundred and twenty-five feet east of the crossing.

At the close of all the testimony, appellant challenged the sufficiency of the evidence to support a verdict for respondents, on the ground that respondents had shown conclusively by their own evidence that they were guilty of contributory negligence, which challenge was, by the court, overruled. The jury returned a verdict for respondents, upon which appellant moved for a new trial, which motion was denied.

The first assignment of error urged by appellant is in overruling its challenge to the sufficiency of the evidence, and in failing to direct a verdict for appellant. Upon an issue as to contributory negligence, where there is evidence and inferences to be deduced therefrom by which reasonable men may arrive at different conclusions, contributory negligence is a question for the jury; and, in passing upon that question, we must accept as true that view of the evidence most

favorable to respondents. *Brandt v. Northern Pacific R. Co.*, 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Kent v. Walla Walla Valley R. Co.*, 108 Wash. 251, 183 Pac. 87; *Fisher v. Tacoma R. & Power Co.*, 148 Wash. 122, 268 Pac. 180.

Whether it was just twilight, or not yet dark, or whether it was 4:35 p. m. or 4:50 p. m., or just about five o'clock when the collision in question occurred, was a disputed question of fact which went to the jury upon competent evidence, and was for the jury to determine. Having resolved the question in favor of respondents, we are concluded thereby. We cannot, as appellant stoutly urges, by merely taking judicial notice of the fact that the sun set on the day in question at either 4:40 p. m. or 4:41 p. m., and that it must have been light at the time, disregard the positive evidence that the accident occurred about one-half hour after sunset and on a cloudy day, on which all men know that darkness comes on more rapidly after sunset than on clear days. These were just inferences to be drawn by the jury from the evidence. The court would not have been justified in granting the challenge of appellant to the sufficiency of the evidence and directing a verdict in its favor.

It is next contended that the court erred in refusing to give the jury a requested instruction reading as follows:

"Instruction No. G

"The court further instructs the jury that, when a person goes upon a railroad track, he knows that he goes to a place where he will be killed or injured if a train comes upon him if he is dangerously near the track. He knows he must stop for the train, not the train stop for him. In such circumstances, where he is familiar with the crossing, the obstruction to his vision and all the surrounding circumstances, if he cannot be sure otherwise whether a train is dangerously

near, he must stop and get out of his automobile, if necessary for his own safety. If such a one relies upon not hearing the train or any signal and takes no further precaution, he does so at his own risk.''

Another requested instruction (No. H) incorporated the element of familiarity with a railroad crossing such as that in question, and includes the same elements of being negligent, if he cannot be sure otherwise, if he does not stop his automobile and get out of it, if necessary, to make sure that the crossing is safe.

These instructions were requested under the rule of decision followed in *Baltimore & Ohio R. Co. v. Goodman,* 275 U. S. 66. We distinctly declined to follow that rule in *Mattingley v. Oregon-Washington R. & Navigation Co.,* 153 Wash. 514, 280 Pac. 46. We there stated that, until authoritatively overruled, we were, and would be, bound by our own rule of decision. Under the law as it exists in this state, the instructions requested were erroneous, and the case was submitted to the jury upon proper instructions.

The cases cited by appellant: *Woolf v. Washington R. & Navigation Co.,* 37 Wash. 491, 79 Pac. 997; *Cable v. Spokane & Inland Empire R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; and *Sadler v. Northern Pacific R. Co.,* 118 Wash. 121, 203 Pac. 10, were all cases where the injured persons, as was incontrovertibly established by the evidence in the cases, could observe for some distance the conditions existing, and took no precautions whatever for their safety.

In this case, we are bound by the testimony on behalf of respondents that they did stop, look and listen, and heard and saw nothing that would warn them that a train was approaching or that there was any imminent danger. In other words, they took precautions for their safety, while in the cases cited the injured persons did not.

At the hearing in this court, appellant cited an additional authority thought by it to be much in point: *McFadden v. Northern Pacific R. Co.*, 157 Wash. 437, 289 Pac. 1. The facts in that case were that the person injured collided with a train of flat cars, at night during a heavy fog, in a busy railroad yard. He drove his car into the moving train almost at the middle of it. He was familiar with the locality and its surroundings and conditions. He was familiar with the presence of the railroad crossing and the uses that were made of it. He knew that there were no lights, bells, or warning signals of any kind, to indicate the location of the crossing tracks, and knew that the tracks were continuously used. Had he stopped, looked and listened, as was proven in this case, he must have avoided running into the train of flat cars. No reasonable inference could be derived in that case but that the injured party was guilty of such contributory negligence as prevented a recovery.

We are forced to the conclusion that this case was properly submitted to the jury on proper instructions, and that there was ample competent evidence to sustain the verdict.

The judgment is therefore affirmed.

MITCHELL, C. J., MAIN, FULLERTON, and FRENCH, JJ., concur.